986 F.Supp. 812 (1997)
Robert STROUGO, on Behalf of THE BRAZIL FUND, INC., Plaintiff,
v.
Juris PADEGS, Nicholas Bratt, Edgar R. Fiedler, Roberto Teixeira da Costa, Ronaldo A. Da Frota Nogueira, Wilson Nolen, Edmond D. Villani, and Scudder, Stevens & Clark, Inc., Defendants,
and
The Brazil Fund, Inc., Nominal Defendant.
Robert STROUGO, on behalf of himself and all others similarly situated, Plaintiff,
v.
Juris PADEGS, Nicholas Bratt, Edgar R. Fiedler, Roberto Teixeira da Costa, Ronaldo A. Da Frota Nogueira, Wilson Nolen, Edmond D. Villani, and Scudder, Stevens & Clark, Inc., Defendants.
No. 96 Civ. 2136(RWS).
United States District Court, S.D. New York.
December 1, 1997.
Wechsler Harwood Halebian & Feffer, New York City, NY, Joel C. Feffer, Jeffrey M. Haber, of counsel, for Plaintiff.
Simpson Thacher & Bartlett, New York City, NY, Michael J. Chepiga, Chet A. Kronenberg, of counsel, for Nominal Defendant The Brazil Fund Inc.
Debevoise & Plimpton, New York City, NY, John S. Kiernan, Jeremy Feigelson, Edward V. Di Lello, of counsel, for Defendants.
Ropes & Gray, Boston, MA, John D. Donovan, Jr., Timothy J. Hinkle, Silvestre A. Fontes, of counsel, for Independent Directors of The Brazil Fund.

OPINION
SWEET, District Judge.
Nominal defendant The Brazil Fund, Inc. (the "Fund") has moved, pursuant to Rule *813 23.1 of the Federal Rules of Civil Procedure, for a stay of all proceedings for three months to permit the Special Litigation Committee of the Board of Directors of the Fund (the "SLC") to investigate the allegations of this lawsuit and to act in accordance with the findings of that investigation. As set forth below, the motion is granted.

The Parties
Robert Strougo, suing on behalf of the Fund, purchased 1,000 shares of the Fund on January 11, 1993, and has held shares continuously thereafter.
The Fund, a nominal defendant in this action, is a Maryland corporation whose principal executive office is located in New York, New York. The Fund is a non-diversified, closed-end investment company registered under the Investment Company Act of 1940, 54 Stat. 789, 15 U.S.C. § 80a-1(a) et seq. (the "ICA"), that invests in the securities of Brazilian companies. Shares in the Fund trade on the New York Stock Exchange.
Scudder, Stevens & Clark, Inc. ("Scudder") is a Delaware corporation whose principal offices are located in New York, New York. Scudder serves as investment advisor to and manager of the Fund. It is a registered investment advisor under the Investment Advisers Act of 1940, as amended, 15 U.S.C. 80b-1 et seq.
Juris Padegs ("Padegs") is chairman of the board and a director of the Fund. He is also a managing director of Scudder and serves on both Scudder's board and the boards of other funds managed by Scudder.
Nicholas Bratt ("Bratt") is president and a director of the Fund. Bratt is also a managing director of Scudder and serves on the boards of other funds managed by Scudder.
Edmund D. Villani ("Villani") is a director of the Fund. He is also president and managing director of Scudder and serves on both Scudder's board and the boards of other funds managed by Scudder.
Edgar Fiedler ("Fiedler") is a director of the Fund and serves on the boards of seven other funds managed by Scudder.
Wilson Nolen ("Nolen") is a director of the Fund. He also serves on the boards of fourteen other funds managed by Scudder.
Ronaldo A. Da Frota Nogueira ("Nogueira") is a director and resident Brazilian director of the Fund. He serves on the boards of three other funds managed by Scudder.
Roberto Teixeira da Costa ("Da Costa"), against whom all claims have been dismissed, is a director and resident Brazilian director of the Fund.
Scudder, Padegs, Bratt, Villani, Fielder, Nolen, Noguiira, and Da Costa are referred to herein as the "Defendants".

Procedural History and Background
The procedural and factual background of this action is set forth in the prior opinions of the Court, familiarity with which is assumed. See Strougo v. Padegs, No. 96 Civ. 2136, 1997 WL 473566 (S.D.N.Y. Aug.18, 1997); Strougo v. Padegs, 964 F.Supp. 783 (S.D.N.Y.1997). Facts relevant to this motion are set forth below.
This action arises from the 1995 decision by the board of directors of the Fund (the "Board") to increase the Fund's capital by offering the Fund's existing shareholders rights to purchase additional shares of newly issued stock (the "Rights Offering").
The Fund was created by Scudder in 1988, and invests almost exclusively in securities of Brazilian companies. Scudder is paid a fee equal to a percentage of the Fund's net assets. From December 1994 through November 1995, the Fund's net assets declined significantly, dropping to $271 million on November 16, 1995, from $377 million on December 31, 1994. As the Fund's net assets materially declined, so did Scudder's fee.
On October 13, 1995, Defendants announced that the Fund would conduct the Rights Offering, whereby the Fund would issue transferable rights to its shareholders. Each Fund shareholder received one right for each share held; three rights entitled the holder to purchase an additional share at the "Subscription Price" of $15.75. The rights were transferrable; that is, if the shareholders did not wish to exercise their rights to *814 purchase additional shares, they were entitled to sell the rights to any purchaser. The rights expired on December 15, 1995.
Strougo filed his initial complaint on March 22, 1996. He filed the first amended class action and verified shareholder derivative complaint (the "Complaint") on June 17, 1996. Strougo asserts that Scudder and each of the directors of the Fund breached their respective fiduciary duties of loyalty and due care as a result of the development and implementation of the Rights Offering. Strougo alleges that the Rights Offering was motivated by the desire to increase and restore some of Scudder's compensation. In addition, he alleges, inter alia, that the Rights Offering (i) caused the market value of the Fund to decline immediately following announcement; (ii) was dilutive; (iii) was coercive; and (iv) resulted in substantial underwriting and other transactional costs. Plaintiff named the Fund, Scudder and the Fund's directors at the time of the Rights Offering as defendants.
Defendants' motions to dismiss, filed on July 29 and July 30, 1996, were granted in part and denied in part by the Court's May 6, 1997 opinion and order (the "Order"). See Strougo v. Padegs, 964 F.Supp. 783 (S.D.N.Y. 1997). The Order dismissed all direct class action claims and the excessive compensation claim under ICA Section 36(b). The motion was denied with respect to the remaining derivative claims under Sections 36(a) and 48 of the ICA and under the common law.
Defendants' motion for reargument or, in the alternative, certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), filed on May 22, 1997, was denied by the Court on August 15, 1997. Strougo v. Padegs, No. 96 Civ. 2136, 1997 WL 473566 (S.D.N.Y. Aug.18, 1997).
The Board, by resolutions dated May 28, 1997, (i) created the SLC and delegated to that Committee the full powers of the Board to investigate Strougo's allegations and determine whether this litigation is in the corporation's best interests and (ii) appointed Da Costa as a member of the SLC.
Thereafter, Kenneth C. Froewiss was nominated by Da Costa as a new member of the Board, elected to the Board on July 8, 1997, and appointed by Da Costa to the SLC. On or about July 10, 1997, the SLC retained Simpson Thacher & Bartlett as independent counsel. The SLC had its first organization meeting on July 24, 1997 and estimates that it will complete its investigation by mid-December.
The Fund filed the instant motion on September 10, 1997. Oral argument was heard on September 17, 1997, at which time the motion was considered fully submitted.

Discussion
In a derivative lawsuit where, as here, demand on the corporation's board is deemed futile, see Strougo, 964 F.Supp. at 795, the corporation may respond by appointing an independent special litigation committee to investigate the claims and recommend a course of action. See Rosengarten v. Buckley, 613 F.Supp. 1493, 1499 (D.Md.1985) (concluding that "Maryland would follow the majority rule and permit an interested board of directors to appoint a special litigation committee of independent directors to review a pending derivative suit"). The court would then review the committee's recommendation, which may be to terminate the litigation, to take it over, or to permit the plaintiff's action to continue. Of course, the committee's recommendation may not be accepted. As the Second Circuit noted in Joy v. North, 692 F.2d 880, 888 (2d Cir.1982):
The reality is ... that special litigation committees created to evaluate the merits of certain litigation are appointed by the defendants to that litigation. It is not cynical to expect that such committees will tend to view derivative actions against the other directors with skepticism. Indeed, if the ... directors expected any result other than a recommendation of termination ... they would probably never establish the committee.
Id. at 888.
Here, the fund has chosen to follow the special litigation committee path. Accordingly, the Fund has moved to stay Strougo's action pending completion of the SLC investigation, which it estimates requires approximately *815 three months from the time of filing the instant motion, which would be mid-December.
The Fund contends, and plaintiff does not dispute, that courts normally grant a stay of proceedings for a reasonable period to permit an SLC to complete its investigation.[1] Therefore, assuming that a stay would ordinarily be granted, Strougo must show why these circumstances are sufficiently extraordinary to require an exception to the rule.
First, Strougo contends that the stay should be denied because the interval between the SLC's establishment on May 28, 1997 and the motion for the stay filed on September 10, 1997 was too long to be timely. However, as noted by Strougo, the discovery was stayed pending determination of the Defendants' motion to reargue or certify for interlocutory appeal, which was decided by the Court on August 15, 1997. Furthermore, if the motion was granted, then the stay may have continued pending completion of the reargument or appeal. Moving for a stay before August 15, 1997 was not necessary. The Fund does not say, and Strougo does not claim, that the SLC was inactive pending the Court's decision. Therefore, the proper interval to consider is that between mid-August and the motion filing date, which is under one-month and therefore is sufficiently prompt.
Second, Strougo contends that Da Costa is not independent and therefore cannot constitute an independent special litigation committee. Strougo notes that Da Costa argued in his earlier motion to dismiss that the complaint does not allege facts sufficient to suggest the claims alleged. The independence of the SLC is a factor which the Court would consider when and if it is faced with reviewing the SLC's recommendations.[2] This issue, however, is more appropriate to address at that time, rather than now, when the full facts of the Committee's procedures and investigation would be available for review.
Finally, Strougo contends that proceeding with dual discovery by himself and the SLC would not interfere with the Fund's operations, and therefore the stay is not justified. The Fund, on the other hand, argues that the increased effort to produce discovery for two investigations would further disrupt its operations and increase its litigation costs. Setting aside the question of the magnitude of the additional effort in this case, Strougo has not established that this burden is any less in this case than in the general situation where a special litigation committee is investigating a plaintiff's derivative claims. As noted above, since Strougo accepts the proposition that a stay should generally be granted for a reasonable time, there is no showing here that the instant case should be an exception to the general rule.
The three-month stay requested by the Fund is reasonable. According to the Fund's reasoning that the stay was necessary only after the motion to reargue was denied, since before that time the SLC investigation proceeded without Strougo's interference since the pending motion stayed the discovery, the three-months requested should be counted from the time the motion was filed. This would permit an approximately six-month period since the inception of the SLC for the investigation to be completed. Considering *816 the complexity and seriousness of the allegations in the Complaint, this is a reasonable period.

Conclusion
For the reasons set forth above, the Fund's motion to stay all proceedings is granted, and the stay shall be effective until December 15, 1997.
It is so ordered.
NOTES
[1] The Defendants cite, among several cases, the decision of the Delaware Chancery Court in Kaplan v. Wyatt, 484 A.2d 501 (Del.Ch.1984) aff'd, 499 A.2d 1184 (Del.1985):

The first thing that takes place is that the Special Litigation Committee, upon being appointed, promptly moves on the corporation's behalf for a stay of all discovery by the plaintiff pending the investigation and report of the Committee. It is a foregone conclusion that such a stay must be granted. Otherwise ... the inherent right of the board of directors to control and look to the well-being of the corporation in the first instance, collapses.
Id. at 510.
[2] See, e.g., Pompeo v. Hefner, 1983 WL 20284 (Del.Ch.1983) (refusing to consider independence of special litigation committee prior to the committee's completion of its investigation). The court held that:

[T]he independence of the litigation committee does not take on critical significance until such time as the committee moves this Court to dismiss the derivative action based on the findings of its investigation. At that point ... it becomes the function of this Court to pass on the good faith and independence of the litigation committee.
Id. at *2.